# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ADELLA L. LOGAN,

    Plaintiff

v.

CITIZENS BANK, N.A., et al.,

    Defendants

Case No.: 2:26-cv-00887-APG-MDC

**Order (1) Granting Defendants' Motions to Dismiss with Leave to Amend; (2) Granting Plaintiff's Motion for Leave to File a Surreply; (3) Holding Plaintiff's Motion for a Temporary Restraining Order in Abeyance, and (4) Granting Plaintiff's Motions for Emergency Consideration**

[ECF Nos. 3, 9, 16, 21-23, 24]

Plaintiff Adella Logan sues defendants Citizens Bank, N.A.; Mortgage Electronic Registration Systems, Inc. (MERS); and Trustee Corps, asserting several claims related to the servicing of her home loan and the defendants' initiation of nonjudicial foreclosure proceedings. She first alleges that Citizens violated the Real Estate Settlement Procedures Act (RESPA) and its implementing regulations because it did not conduct a reasonable investigation or provide a timely substantive response to her Qualified Written Request (QWR).[1]  Second, she alleges that her home loan is federally insured by the Federal Housing Administration (FHA), so it is subject to the U.S. Department of Housing and Urban Development's (HUD) servicing guidelines. She asserts that under those guidelines, the defendants are required to conduct, or make a reasonable effort to conduct, a face-to-face meeting with a homeowner prior to initiating foreclosure, but they did not do so here. She alleges this failure "renders any foreclosure action voidable and subject to injunctive relief." ECF No. 1 at 7.  In count three, she asserts a wrongful foreclosure

---

[1] Logan improperly lumps all the defendants together in her allegations, but it appears from the briefing that she sent a QWR only to Citizens.

claim, and in count four she seeks declaratory and injunctive relief related to the defendants' alleged violations and their ability to foreclose.  Finally, Logan brings a quiet title claim, alleging the defendants "cannot demonstrate a valid, enforceable interest in the Property sufficient to support foreclosure" because they have not produced the original promissory note, a complete chain of title, documentation establishing the current holder of the note, and a "complete and accurate accounting of the alleged debt." *Id.* at 9.

In March 2026, Logan moved for a temporary restraining order (TRO) to enjoin the foreclosure sale that was set for May 15. ECF No. 3.  Because there was sufficient time before the sale for Logan to serve the defendants and for the defendants to respond, I ordered Logan to serve the defendants. ECF No. 5.

Citizens and MERS did not respond to the motion for a temporary restraining order.  Instead, they filed similar motions to dismiss. ECF Nos. 9; 24.  Logan opposed Citizens' motion to dismiss and moved for leave to file a surreply to Citizens' reply brief.[2] ECF Nos. 13; 16.  Because I had not yet ruled on the TRO motion, Logan recently filed three motions seeking expedited consideration of the TRO motion before the May 15 sale date. ECF Nos. 21-23.  MERS filed its motion to dismiss yesterday, so Logan has not yet had an opportunity to respond.  But MERS' motion raises the same arguments as Citizens' motion, with the added assertion that MERS claims no interest in the property because it assigned its interest in the deed of trust to Citizens. ECF No. 24 at 7.  Logan thus has had an adequate opportunity to address MERS' arguments, as they are identical to Citizens'.

---

[2] The deadline for Citizens to respond to the surreply motion is May 11.  The impending sale date does not allow for that motion to be fully briefed.  I grant the motion because it does not change my conclusion that Logan's complaint must be dismissed, with leave to amend.

2

I grant Citizens' and MERS' motions to dismiss, with leave to amend.  I am inclined to grant the TRO motion if Logan can validly make the amendments I identify in this order regarding her HUD regulation claim.  I therefore hold her TRO motion in abeyance to see if she files an amended complaint that addresses the identified deficiencies.  Because I am addressing these matters on an expedited basis, I grant her various motions for emergency relief.

**I.  I infer that Logan is suing as trustee of the Trust that owns the subject property, order her to make that amendment, and consider her TRO motion on the assumption she has standing as trustee.**

In the complaint's caption, Logan sues using her own name to stop the foreclosure of the property at 5009 Harbor Place in North Las Vegas. ECF No. 1 at 1.  She identifies herself as "the owner and occupant of the real property that is the subject of this action." *Id.* at 3.  However, Logan quitclaimed the property to herself as Trustee of the Adella L. Logan Trust dated June 8, 2020. *Id.* at 30; *see also id.* at 4 (alleging that the property "is held in a duly recorded trust, and Plaintiff is the lawful beneficiary and occupant thereof").

Under Nevada law, the trustee is the real party in interest entitled to bring suit and defend on a trust's behalf. *Causey v. Carpenters S. Nev. Vacation Tr.*, 600 P.2d 244, 245 (Nev. 1979) ("It is the trustee, or trustees, rather than the trust itself that is entitled to bring suit.").  The Supreme Court of Nevada has "long recognized that the trustees have the legal interest in the trust property, and, therefore, they are necessary parties in suits respecting such property." *In re Richard H. Goldstein Irrevocable Tr.*, 575 P.3d 72, 76 (Nev. 2025) (quotation omitted).[3]

---

[3] *See also* Nev. R. Civ. P. 17(a)(1)(E) (making "a trustee of an express trust" the real party in interest "without joining the person for whose benefit the action is brought"); Fed. R. Civ. P. 17(a)(1)(E) (same); *In re Tower Park Props., LLC*, 803 F.3d 450, 459 (9th Cir. 2015) (A "trust beneficiary is not the entity positioned to take legal recourse to protect the trust assets, unless the beneficiary is seeking only to enforce the terms of the trust."); Restatement (Third) of Trusts

It is reasonable to infer from Logan's allegations that she is suing in her capacity as trustee for the Trust. Additionally, to the extent that is unclear, it is easily cured through amendment. I therefore order her to make that amendment, and I will consider the TRO motion assuming that she can readily do so because it is consistent with the complaint's factual allegations and attached quitclaim deed, and Citizens and MERS do not argue that Logan lacks standing.

**II. I grant the defendants' motions to dismiss and hold Logan's TRO motion in abeyance pending amendment.**

To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Citizens and MERS did not respond to the TRO motion. Instead, they moved to dismiss. I treat the motions to dismiss as the defendants' oppositions to the TRO motion. When considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v.*

§ 107(2)(b) (A.L.I. 2012) (explaining that a beneficiary may bring or defend suit where "the trustee is unable, unavailable, unsuitable, or improperly failing to protect the beneficiary's interest").

*Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  However, I may consider evidence beyond the complaint's allegations when considering Logan's TRO motion.

### A. RESPA (count one)

"RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012) (citing 12 U.S.C. § 2605(e)(1)(A), (e)(2)).  The borrower's inquiry is referred to as a QWR.  "If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a 'pattern or practice of noncompliance,' statutory damages of up to $1,000." *Id.* (citing § 2605(f)).

"[U]nder § 2605(e), a borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief . . . that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of the loan.'" *Id.* at 666 (quoting §§ 2605(e)(1)(A)-(B)).  Not every inquiry or complaint a borrower makes to a servicer qualifies as a QWR, however. *Id.*  "RESPA defines the term 'servicing' to encompass only 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . ., and making the payments of principal and interest and such other payments.'" *Id.* (quoting § 2605(i)(3)).

Servicing thus "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement." *Id.* at 666-67.  Consequently, a borrower's letter that challenges "only a loan's validity or its terms" is not a QWR, so a servicer has no duty to respond to such a letter under § 2605(e). *Id.* at 667

The complaint alleged that on February 21, 2026, Logan sent a QWR "disputing the loan account and requesting specific information relating to the servicing of the loan." ECF No. 1 at 4.  Logan asserted that her QWR "identified errors and requested, among other things, a complete payment history, documentation supporting all charges and corporate advances, copies of the promissory note and any assignments, and a full accounting of the loan." *Id.*  She alleged that although Citizens acknowledged receipt of the QWR, it did not conduct a reasonable investigation and did not provide a "complete and substantive response." *Id.*  Specifically, she asserted that Citizens did not provide a "complete and verified payment history," "[d]ocumentation supporting alleged corporate advances," copies of the note and any endorsements or assignments, and an "itemized accounting of the loan balance." *Id.*  She alleged she suffered "actual damages, including but not limited to financial harm, increased loan balances due to unverified charges, emotional distress, and costs incurred in attempting to obtain information and prevent foreclosure." *Id.* at 6.

Logan attached her QWR to her complaint. *Id.* at 14-15.  In that letter, she stated that she "dispute[d] the accuracy and validity of the servicing of this loan," but the letter does not identify what she believes is inaccurate or invalid. *Id.* at 14.  She also requested the following information:

> 1. The name, address, and contact information of the current holder and/or owner of the promissory note.

2.  The complete loan payment history from origination to present, including application of each payment.

3.  An itemized statement of the total amount necessary to cure the alleged default, including principal, interest, escrow, corporate advances, late charges, trustee fees, attorney fees, and any other charges.

4.  Copies of all assignments of the Deed of Trust.

5.  Documentation supporting acceleration of the loan, including the date and basis for such action.

6.  A copy of the promissory note, including all endorsements, allonges, and modifications.

7.  Documentation supporting the corporate advances currently reflected in the amount of $3,927.41.

8.  Documentation supporting compliance with NRS 107.510, including records of borrower contact and loss mitigation review.

9.  Identification of the individual who executed the Affidavit of Authority to Exercise Power of Sale and documentation establishing their authority.

10.  The designated address for receipt of future Qualified Written Requests.

*Id.*

Citizens and MERS move to dismiss this claim, arguing that RESPA requires an allegation that Logan suffered actual damages and Logan has not alleged she suffered any harm due to Citizens' allegedly deficient response to her QWR.  They assert that she alleges harm in only a conclusory fashion.  Logan responds that she has alleged actual damages, including increased loan balances due to unexplained charges and out-of-pocket expenses incurred in trying to obtain information and correct errors.  She argues that whether she suffered actual damages is a factual dispute not suitable for resolution at the dismissal stage.  She thus contends that her letter was a QWR related to loan servicing to which Citizens was obligated to respond.

I grant Citizens' and MERS' motions to dismiss this claim without prejudice.  Although the complaint identifies categories of actual damages, it does so in only conclusory fashion.  For example, the complaint states that Logan incurred an increased loan balance due to unverified charges, but she does not identify a single charge or even a category of charges that she contends is improper, nor does she give reasons for her belief that her account is in error.  She thus has not

7

plausibly alleged she suffered actual damages because of unverified charges.  She also states in conclusory fashion that she incurred costs attempting to obtain information and prevent foreclosure, but she does not provide any facts about what those costs are and how Citizens' allegedly inadequate response caused those losses.  She cannot rely on costs she incurred in submitting the QWR, because the statute allows for actual damages only if the servicer fails to properly respond. 12 U.S.C. § 2605(f).  However, I grant leave to amend because it is not clear that amendment would be futile. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." (simplified)).

Logan attached a declaration to her opposition to the motion to dismiss with additional allegations.  I may not consider the declaration when ruling on a motion to dismiss. *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019).  Although I cannot consider Logan's declaration when resolving Citizens' motion to dismiss, I may consider it when evaluating her TRO motion.

In that declaration, Logan states that she has suffered out-of-pocket expenses, "including postage, copying, and administrative costs associated with preparing and sending written requests," and that she has spent time "investigating account discrepancies" and communicating with Citizens. ECF No. 13 at 11.  She also states that she has suffered financial harm, including "increased loan balances due to unverified, unexplained, or improperly applied charges." *Id.* at 12.  The expenses she incurred preparing a QWR were not incurred because of Citizens' allegedly deficient response, so she has not shown those are actual damages supporting a RESPA claim.  Additionally, she still does not identify what charges she disputes or why they are

incorrect, so even if I had not already dismissed this claim, her declaration does not assist her in meeting her burden to show she is likely to succeed on her RESPA claim.

After Logan filed her opposition to the motion to dismiss, she filed a supplement[4] and attached to it Citizens' substantive response to her QWR. ECF No. 14. Even considering this information, Logan has not shown a likelihood of success on this claim. In the QWR response, Citizens stated that it researched Logan's account and "concluded that no error occurred." *Id.* at 8. Citizens enclosed a copy of a letter that identified Citizens as the owner of the loan, and it included an account activity statement from loan origination through 2026 that documented how payments were applied, along with a breakdown of the fees Citizens incurred to enforce the note. *Id.* at 8-9, 12. The response also stated that "no Loss Mitigation review was completed," and attached copies of "Loss Mitigation correspondence" from 2025 and 2026. *Id.* at 9. Citizens stated that the "Affidavit of Authority to Exercise Power of Sale is proprietary information and cannot be provided." *Id.* But Citizens provided copies of the note, deed of trust, closing disclosure, and mortgage account statement. *Id.* It also provided her with the total past-due balance. *Id.*

Logan stated in her supplement that the QWR response identifies the owner of the loan as Citizens and that this "representation directly implicates issues of standing and real party in interest," but Logan does not explain why. ECF No. 14 at 2. She stated that she presented evidence of disputed loan ownership, but she does not identify what that evidence or dispute is. *Id.* at 3. She later stated that the "identification of Citizens Bank as owner may conflict with

---

[4] I refer Logan to Local Rule 7-2(g), which provides that a "party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause. The judge may strike supplemental filings made without leave of court." As a one-time courtesy, I do not strike Logan's unauthorized supplement and will consider it, as Citizens did not object and does not dispute the letter's authenticity.

other representations in litigation," but she identifies no contrary representations.[5] *Id.* at 4.  These comments also suggest that she is disputing the loan's validity or its terms, which are not proper subjects for a QWR.  Finally, Logan mentions disputed accounting and fees, as well as servicing conduct, but she again does not identify what it is she disputes and why she disputes it. *Id.* at 2, 4.  I therefore deny Logan's TRO motion to the extent it is based on RESPA, both because she has not plausibly alleged a RESPA claim and because the evidence she has attached does not support one.

**B.  Violation of FHA Servicing Regulations (count two)**

In count two, Logan alleges that the loan is FHA insured, and thus the defendants must comply with HUD servicing regulations.  She contends they did not comply with 24 C.F.R. § 203.604(a)(1), which requires them to conduct, or make a reasonable effort to conduct, a meeting with a defaulting borrower on an FHA-insured loan before initiating foreclosure.  She asserts this contact is a condition precedent to foreclosure and the defendants' failure to comply entitles her to injunctive relief to stop the sale until they do.

Citizens and MERS move to dismiss this claim because there is no private right of action to enforce HUD regulations.  Logan responds that she is not asserting an independent claim under the regulation; rather, she is asserting that the regulations were incorporated into the deed of trust, and complying with the FHA's regulations is a condition precedent to foreclosure under the parties' agreement.  She contends she can thus seek an injunction to stop a foreclosure that does not comply with the regulations.  In reply, Citizens argues that her complaint styles this

---

[5] To the extent she is referring to the fact that the original lender was Federal Savings Bank, the copy of the note that Citizens provided shows the note was endorsed "pay to the order of: Citizens Bank, N.A.," and this endorsement was signed by Federal Savings Bank. ECF No. 14 at 42.

claim as a violation of the regulations, not as a breach of contract claim.  It also contends that even if it is a breach of contract claim, the complaint has not identified a contract, that she performed under that contract, that Citizen breached the contract, or damages resulting from the breach.

There is no direct cause of action against a lender for failure to comply with HUD's regulations. *See, e.g.*, *Lloyd v. N.J. Hous. & Mortg. Fin. Agency*, 845 F. App'x 139, 142 (3d Cir. 2021); *Inman v. Suntrust Mortg., Inc.*, No. 1:10-CV-1031 AWI GSA, 2010 WL 3516309, at *2 (E.D. Cal. Sept. 3, 2010) ("Neither the National Housing Act nor its implementing regulations (including 24 C.F.R. §§ 203.604, and 203.605) provide for a private right of action."); *Baker v. Countrywide Home Loans, Inc.*, No. CIV A 308-CV-0916-B, 2009 WL 1810336, at *3 (N.D. Tex. June 24, 2009) ("Because the aim of the FHA and the HUD regulations is to govern the relationship between mortgagees and the government, courts have recognized that violations of such provisions fail to give rise to a private cause of action." (listing cases)).  Logan concedes she has no direct claim under the regulation, so she reframes her claim as one for breach of contract. ECF No. 13 at 4 ("Plaintiff does not assert an independent cause of action under federal regulations.").  I therefore grant Citizens' and MERS' motions to dismiss count two to the extent it stated a claim directly under the regulation.

As for whether it would be futile for Logan to amend, courts are split on whether, as a defense to foreclosure, a breach of contract claim can be grounded on a deed of trust incorporating HUD regulations.  Some courts have held that there is no claim to enforce the regulation's requirements even where the deed of trust incorporates the regulations. *Lloyd*, 845 F.

App'x at 142[6]; *see also Klein v. Wells Fargo Bank, N.A.*, No. A-14-CA-861-SS, 2014 WL 5685113, at *6 (W.D. Tex. Nov. 4, 2014), *aff'd*, 613 F. App'x 428 (5th Cir. 2015) (citing cases). Other courts have held that if a deed of trust incorporates the HUD regulations, the borrower can enforce the regulations as contractual terms, not as a direct enforcement of the regulation. *See Dan-Harry v. PNC Bank, N.A.*, No. CV 17-136 WES, 2018 WL 1083581, at *1 (D.R.I. Feb. 27, 2018) ("follow[ing] the case law as it has developed in Massachusetts and elsewhere regarding the incorporation of the HUD regulations into FHA insured mortgages that include paragraph 9(d)," and holding that the plaintiff sufficiently stated a "viable state-law claim of breach of contract"); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-CV-02092-HSG, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017); *Lindsey v. JPMorgan Chase Bank Nat'l Ass'n*, No. 3:12-CV-4535-M-BH, 2013 WL 2896897, at *14 (N.D. Tex. June 13, 2013); *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12-CV-617, 2013 WL 350527, at *5 (E.D. Va. Jan. 29, 2013) ("[B]y asserting that Defendants failed to comply with § 203.604, Plaintiffs have sufficiently alleged that Defendants failed to satisfy a condition precedent to foreclosing on the home, and thus, have breached the Deed of Trust.").

The Supreme Court of Nevada has not addressed whether a state law breach of contract claim may rely on a deed of trust incorporating HUD regulations. I therefore must predict how that court would decide the issue. *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1027 (9th Cir. 2024) ("In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." (quotation omitted)). I predict the

---

[6] In *Lloyd*, the borrower argued she was entitled to enforce the regulation through the contract, rather than arguing that the regulation was a contractual term that could be enforced through a state law breach of contract claim. 845 F. App'x at 142.

Supreme Court of Nevada would hold that where parties agree to incorporate federal regulations as contractual terms, those terms are enforceable through a breach of contract action.

The Supreme Court of Nevada has analyzed deeds of trust as contracts under ordinary contract interpretation principles. *See Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 258 (Nev. 2012); *Big Rock Assets Mgmt., LLC v. NewRez LLC*, No. 86675, 558 P.3d 1196, 2024 WL 4865435, at *1 (Nev. 2024) (stating that it was conducting de novo review because "the issue on review is one of contract interpretation, namely the interpretation of the terms in the deed of trust"). And it has indicated that a deed of trust's terms should be given effect where they are "an express part of the contract" and are "not repugnant to the remainder of the contract." *Edelstein*, 286 P.3d at 258.

Here, section 22(d) of the deed of trust is entitled "Regulations of HUD Secretary." ECF No. 14 at 32. That section states that "[i]n many circumstances regulations issued by the [HUD] Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." *Id.* Under Edelstein, I predict the Supreme Court of Nevada would hold that this express contractual language must be given effect and that it is not repugnant to the remainder of the contract.

It therefore would not be futile to allow Logan to amend her complaint to assert a breach of contract claim. And because her assertion that the defendants did not comply with this express contractual term stands unrebutted in relation to her TRO motion, I am inclined to grant her TRO motion if she is able to make this amendment.

Citizens argues in its reply brief that even if the complaint could be read to assert a breach of contract claim, Logan does not allege that she performed under the contract. *See*

*Iliescu v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. Ct. App. 2022) (To state a breach of contract claim, the plaintiff must allege "(1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages."). To the extent Citizens is contending that Logan's default on mortgage payments would excuse the defendants' failure to comply with the contract's requirement that they follow the HUD regulations relating to foreclosure, I disagree. Under Nevada law, "[w]hen parties exchange promises to perform, one party's material breach of its promise discharges the non-breaching party's duty to perform." *Cain v. Price*, 415 P.3d 25, 29 (Nev. 2018) (citing Restatement (Second) of Contracts § 237 (A.L.I. 1981)). However, "there are several possible exceptions to this rule—for example, . . . where the contract expressly or implicitly guarantees a beneficiary's right regardless of other parties' performance." *Id.* at 29 n.4 (citing Restatement (Second) of Contracts § 309 cmt. b). Here, the relevant provision specifically contemplates that the borrower is in default but nevertheless restricts the right to foreclose through compliance with HUD regulations.

In sum, Logan has not yet alleged a plausible breach of contract claim, but she could through amendment. So I dismiss this claim with leave to amend. Logan need not file another TRO motion, as I will review the TRO motion based on her amended complaint. If Logan amends to assert this claim, I am inclined to enjoin the May 15 sale on this ground because Logan's assertion that the defendants have not fulfilled a contractual requirement for them to proceed with foreclosure stands unrebutted. Additionally, Citizens and MERS do not address the other TRO factors, so those also stand unrebutted. Logan has demonstrated she is likely to suffer irreparable harm through the loss of her property. Loss of real property is a recognized irreparable harm in Nevada. *Dixon v. Thatcher*, 742 P.2d 1029, 1030 (Nev. 1987) ("Because real

property and its attributes are considered unique[,] loss of real property rights generally results in irreparable harm.").  The balance of hardships tips strongly in her favor, as the harm to the defendants is merely to comply with their contractual obligations before conducting foreclosure, whereas she will lose her property.  The public interest also would favor an injunction to uphold contract rights, or the public interest is at least neutral.  If I grant the injunction, I will not require a bond because Logan has indicated she lacks the means to post a bond, and the defendants have not requested a bond nor provided evidence of harm to them if the sale is temporarily enjoined. *See* ECF No. 3 at 4.

### C. Wrongful foreclosure (count three)

Logan alleges that any foreclosure would be wrongful under Nevada law because the defendants have not complied with RESPA and FHA servicing obligations. ECF No. 1 at 7.  She also alleges that the defendants have not "provide[d] sufficient documentation establishing the validity and accuracy of the alleged debt." *Id.*

Citizens and MERS move to dismiss this claim because it is not ripe, as no foreclosure sale has occurred.  Logan responds that she can preemptively seek to stop a sale that would be wrongful if completed where the sale is imminent.

To state a wrongful foreclosure claim, a plaintiff must allege "that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983).  "The elements of a claim for wrongful foreclosure are: (1) that a foreclosure sale occurred; and (2) the [debtor] was not in default." *Bank of N.Y. Mellon v. Log Cabin Manor Homeowners Ass'n*, 362 F. Supp. 3d 930, 939 (D. Nev. 2019) (quotation omitted).

Logan does not allege a foreclosure sale has taken place and asks me to enjoin the sale. Thus, she has not plausibly alleged a wrongful foreclosure claim. I therefore grant Citizens' and MERS' motions to dismiss this claim without prejudice to Logan pursuing a wrongful foreclosure claim should a foreclosure sale eventually occur.

### D. Quiet Title (count five)

In count five, Logan alleges the defendants cannot show a valid interest in the property because they have not produced the original note or a "properly endorsed copy," a complete chain of assignments, documentation establishing the current holder of the note, and a complete accounting of the debt. ECF No. 1 at 9. She also references the alleged violations of RESPA and the FHA servicing guidelines. *Id.*

Citizens and MERS move to dismiss this claim, arguing that this is an equitable claim and to seek equity, Logan must do equity. They contend she has not alleged that she has tendered the amount due on the loan and she does not dispute that she is in default, so she cannot pursue equitable relief. Logan responds that she need not allege tender because she disputes the validity or amount of the debt, she challenges the authority to foreclose, and she contends the foreclosure process is defective.

I dismiss this claim with leave to amend. Logan has not alleged any facts to support her assertion that one or more of the defendants do not have a valid lien on the property on which they could foreclose due to her nonpayment.[7] It is unclear from her complaint and briefs why she believes the debt is invalid or the amount of the debt is incorrect.

////

////

---

[7] MERS disclaims an interest in the property in its motion to dismiss. ECF No. 24 at 2.

16

### E. Declaratory and Injunctive Relief (count four)

In count four, Logan alleges there is an actual controversy between the parties regarding the debt's validity, the defendants' compliance with federal law, and the defendants' authority to foreclose. ECF No. 1 at 8. She seeks declarations that (1) the defendants failed to comply with RESPA and FHA, (2) the defendants lack the present right to foreclose, and (3) the pending sale is invalid. *Id.* She also seeks preliminary and permanent injunctions to prevent the sale. *Id.*

Citizens and MERS argue that declaratory and injunctive relief are remedies, not standalone claims, so these claims fail because her substantive claims fail. Logan responds that her claims are properly pleaded in connection with viable substantive claims and are "[e]ssential to prevent ongoing and irreparable harm." ECF No. 13 at 6.

I dismiss these claims because I have dismissed Logan's other claims on which these allegations depend. But because I have granted leave to amend, Logan may also reallege as requested relief declarations and an injunction.

### F. Amendment

The amended complaint must be a complete document in and of itself and will supersede the original complaint in its entirety. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court. Logan is advised to support each claim with factual allegations because all complaints "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). When claims are alleged against multiple defendants, the complaint should clearly indicate which claims apply to which defendant. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). Logan should specifically identify each defendant and support each claim with factual allegations about

17

each defendant's actions. Where multiple claims are alleged, the complaint should identify which factual allegations give rise to each particular claim. Logan should be aware that Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim." Thus, the amended complaint should not include lengthy repetitions of statutes, rules, and filings in other cases.

**As a reminder, for me to consider granting the TRO motion based on the amended complaint, Logan must file an amended complaint to (1) clarify that she is suing in her capacity as trustee of the Adella L. Logan Trust dated June 8, 2020 because that is the entity that owns the property, and (2) allege a breach of contract claim based on the deed of trust incorporating the HUD regulation that she claims the defendants violated, along with factual allegations that the defendants did not conduct the required meeting and did not make a reasonable effort to arrange such a meeting.** If Logan chooses to amend her other claims, I suggest she review the defendants' motions to dismiss and Citizens' reply brief to consider any other arguments they made that may generate another motion to dismiss.

**III.  Conclusion**

I THEREFORE ORDER that plaintiff Adella Logan's motion for temporary restraining order (ECF No. 3) is held in abeyance.

I FURTHER ORDER that plaintiff Adella Logan's motion for leave to file surreply **(ECF No. 16) is GRANTED**.

I FURTHER ORDER that plaintiff Adella Logan's motions for expedited treatment **(ECF Nos. 21-23) are GRANTED** in that I have expedited consideration of this matter.

I FURTHER ORDER that defendant Citizens Bank, N.A.'s motion to dismiss **(ECF No. 9) is GRANTED**.

////

18

I FURTHER ORDER that defendant Mortgage Electronic Registration Systems, Inc.'s motion to dismiss **(ECF No. 24) is GRANTED**.

I FURTHER ORDER that plaintiff Adella Logan must file an amended complaint by **Tuesday, May 12, 2026** if she wants me to consider whether to enjoin the foreclosure sale currently set for May 15, 2026 based on her amended complaint.

DATED this 6th day of May, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

19